**SEELEY v. HELVERING, Commissioner of Internal Revenue.**

**No. 208.**

Circuit Court of Appeals, Second Circuit.

May 6, 1935.

Harvey K. Zollinger, of New York City (Charles W. Atwater, of New York City, of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, John G. Remey, and John Mac.C. Hudson, Sp. Assts. to the Atty. Gen., for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal raises the question of a taxpayer's power to have his income tax for the year 1929 computed by the use of inventories under section 22 (c) of the Revenue Act of 1928 (26 USCA § 2022 (c). He was a stockbroker in New York City, associated with, but not a member of, a firm, some of whose orders he executed on the floor of the exchange; but he also did business upon his own account, buying and selling for himself on margin. He was, as we understand it, what is commonly known as a "floor trader," and he had no personal customers. In making his return he claimed the right to compute his income by subtracting from the sum of his inventory at the beginning of the year plus his purchases during the year, the sum of his inventory at the end of the year, plus his sales during the year. This both the commissioner and the Board refused to allow, and the taxpayer appealed.

Section 22 (c) of 1928 leaves altogether to the discretion of the commissioner the question of when inventories may be used, and the regulations promulgated under it have the force of law. Finance & Guaranty Co. v. Commissioner, 50 F.(2d) 1061 (C. C. A. 4). Article 105, Regulations 74, allows a "dealer in securities" to use inventories and defines that phrase as follows: "A dealer in securities is a merchant of securities * * * with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived. * * * Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business * * * are not dealers in securities." Seeley did not buy se-

curities and resell them to customers, as did the taxpayers for instance in Re Hall's Estate, 29 B. T. A. 1255. So far as he acted for the firm with which he was associated, he was merely a broker when he bought; he did not buy for himself but for the firm's customers. When he sold, he did not sell *to* those customers, but *for* them. A merchant is not a broker; nor a broker a merchant. So far as he traded in securities on his own account, his sales were on the exchange to persons whom he did not even know; these were not his customers, but customers of the brokers who bought of him. Probably on occasion he sold to other traders, acting, like him, for themselves, but they would have been amazed to hear that they were his customers. Article 105 meant by a "merchant" a dealer who bought securities for himself and sold them to investors who might or might not rely upon his advice. While the security business is usually conducted by brokers who act only as agents, such merchants are by no means unknown; they do a business exactly like any other merchant. Besides, a merchant, ordinarily at least, does not resell to the same class of persons from whom he buys; he is a middleman in distributing the goods. Seeley was a speculator. Were it not for the concluding sentence of the article, we should have thought the meaning too plain for discussion.

The uncertainty arises from the fact that not only must a "merchant" sell to customers, but he must have "an established place of business." We should have therefore expected the last sentence, which was redundant anyway, to read: "Taxpayers who buy and sell or hold securities for investment or speculation, *or* not in the course of an established business." "And," in place of "or," suggests that those who buy and sell or hold in the course of an established business might be "dealers." But though this may throw a faint shadow across the earlier words, it cannot obscure them. A "floor trader" would indeed be quite naturally described as "a dealer in securities," but nobody would think of calling him a "merchant" with "customers." The intent is clear at the outset, and it is much more reasonable to substitute the disjunctive than to seize on such a fragile inference to make the whole article equivocal, if not incomprehensible. Our own decision in Harriman National Bank v. Commissioner, 43 F.(2d) 950, which appears to be the only

one in the courts, does not touch the question.

■ One other question remains. Seeley had always made up his returns upon the same theory, beginning in 1924, and the commissioner had always passed them. He argues that this acquiescence should control the year 1929. We do not understand that this is put forward as more than a makeweight in interpretation; as such, it is certainly not enough. Whatever the commissioner may have thought before, the article is much too clear for us to yield to his construction of it. So far as the argument asserts that, having passed the earlier returns, the commissioner in some way disabled himself from later correcting his error, it is so plainly unsound as to need no discussion. Sweets Co. v. Commissioner, 40 F.(2d) 436 (C. C. A. 2); John M. Parker Co. v. Commissioner, 49 F.(2d) 254 (C. C. A. 5); Bonwit Teller & Co. v. Commissioner, 53 F.(2d) 381, 82 A. L. R. 325 (C. C. A. 2).

Order affirmed.